Good morning. I really wish to thank all of you for such a very warm welcome. I've done a number of Pellerin arguments in the State Court, and this is by far the best experience I've had so far. We'll see if I say the same when I'm done here. Don't push your luck. Well, I wish to just make a few brief remarks and then answer questions and reserve whatever time is left. I think that the briefs have pretty well covered the matter, and I'm sure you have very insightful questions to ask. This case is really about the most fundamental part of the criminal justice system, evidence. Collection of it, preservation of it, transmission and evaluation of it to the district attorney and evaluation by the district attorney or prosecutor. All the aspects of this case are so fundamental, and I think it's going to be very important to make sure that the rules are really clarified here for everyone that follows. This case begins with... I'm sorry. So why wouldn't we apply collateral estoppel to the decisions that were made in the State Court? Two reasons. Number one, the main reason is simply put, that there was no final decision on the merits. It never reached a point, a ripening point, where it was a final decision. There was a ruling in the trial court. We never had an opportunity to appeal that decision. There was a petition from Vandamus. That was filed concurrently with another petition from Vandamus. So two petitions from Vandamus went up at the same time. One was to overturn the ruling in the State Court on the motion to dismiss, and the other one was on a ruling to recuse the entire Nevada County District Attorney's Office. The Third District Court of Appeals said, we're just going to send this entire case to the Attorney General's Office for review. It's such a problem. So obviously it didn't even need to deal with the motion to dismiss. Well, is it your opinion that California law requires that there be a final appealable decision for collateral estoppel to apply? There has to be finality. There has to be a final judgment or ruling. There has to be an ability to appeal that, whether or not the appeal or taking that is important. You may have, for example, in a misdemeanor case, you may have an immediate right to an appeal, like a motion to dismiss or motion to express evidence. Whereas in a felony case, you have to wait until the case is over. This was a felony case, so we had no right to appeal until the case was completed. The case was not completed. It hadn't even gone to preliminary hearing yet. We are at a very early stage. There was no ability here to fully litigate the issues. There was no final determination of the merits. Well, but is there not, nonetheless, another particular, if you will, alternative, and that is a special hearing prior to trial? I mean, as I read it, Pellerin was charged with a felony. Instead, you can file a motion once the preliminary hearing is done at the preliminary hearing, or then again, you can file a motion at a special hearing prior to trial, and then you can appeal that by an extraordinary writ. Would that not be what you are allowed, a right to appeal through that manner? Well, I agree with you. In this situation, we never got that far. Because it seemed to me that Pellerin was given the equivalent of a special hearing prior to trial. Well, there was a very limited hearing to get into the facts as to what actually happened. We didn't know what happened with this videotape. We went up on a petition from a name that was granted to force the trial court to grant an evidentiary hearing simply to inquire into what happened with this videotape. So that was a two-day hearing inquiring as to the… Correct. All right. And that's where we took the testimony of the Nevada County Sheriff's Department. Well, that's where I thought it was probably a special hearing prior to trial, or at least the equivalent thereto. Well, I think the Third District Court of Appeal realized that in this case, due process required that we be given an opportunity to have, to collect evidence ourselves about what happened to the evidence in the case. But in terms of determination on the merits, we never got there. We never even got to a preliminary hearing. There were so many problems with how the evidence was handled as alleged in the complaint. We filed another petition from NDAMA saying this case shouldn't even go to a preliminary hearing or go to trial. It should just be thrown out right now. What if your client had been acquitted rather than this? What if he'd been acquitted? He'd been acquitted on a trial on the merits? Right. Then it would be collateral estoppel, certainly, because as a final decision. Why is this any different? Well, because there was no trial on the merits here. Well, I understand there was no trial on the merits. What we're talking about as to the evidence, as to what the situation was as to that evidence, it seemed to me there was a special hearing. It was prior to trial. The judge ruled. And I'm trying to figure out why that's so any different than it would be if your client had been acquitted. Well, if you're acquitted, there's no more appeal. You're innocent. Well, I understand that. You walk out of the program. There's no reason to appeal. But in this particular matter, you lost on the preliminary issues, if you will. And the only reason it wasn't gone any further is because it was a dismissal. Correct. In other words, what happened was when the attorney general came in and dismissed the case, they cut off our ability to appeal. We would normally have had a right to appeal that trial court's decision on the motion to dismiss when the attorney general came in and said, there's not even enough facts here to bother prosecuting this case, we're dismissing it. That cut off our right to go up on appeal on the decision that the court ruled on the motion to dismiss. So our right to get there. You're no longer aggrieved? Correct. We're out of court. We're simply out of court by the action of the attorney general. That's the end of the matter. We never got to the question. This case is very unusual in that one respect. Had we gone on to a trial, then we would have had a right to appeal, et cetera. Here, all that was just abrogated, cut short by the attorney general's action. It's unusual in that regard. Going back to the two-day hearing that you had, what was not presented there that you would be seeking to present in the context of this action? Oh, there's quite a bit. I mean, we simply just inquired at the hearing regarding what practices, policies, procedures did Nevada County Sheriff's Department have? What did they do with evidence handling generally? We were trying to find out what happened to this tape. We knew something happened to the tape. We didn't know what. We didn't know by whom. We didn't know by when, et cetera. So we had that hearing to get at basic facts. There was still the issue for trial on the counts that my client was charged with, felony counts, which was assault and battery, et cetera. Those issues, all that factual development still would have to come for the actual trial court. We actually went to a criminal court. No, I'm just asking, in this action, in the 1983 action, what is it that was not presented in the two-day hearing? I'll try and take a moment to think about that. Take a moment. That's a very good question, but I think that we would have much more discovery to do with regard to individual actions. We would want to discover more about the district attorney's office. For example, in that hearing, the district attorney's office refused to appear. In essence, they just simply came into court and said, we have no policies, practices, procedures. We have no rules or regulations about evidence. We don't care about the evidence. We have nothing to say. That's what they said in court. So I never even got to examine the district attorney's office about what they do with evidence, what their policies are. So we were really rather incomplete there. We simply got some testimony from Officer King, trying to understand what he did, and we got some testimony from his superior. He wasn't the sheriff, but an intermediate superior who was his supervisor, regarding whether or not there was any training or policies in the sheriff's department on evidence handling, and there were none. I mean, it seemed to me, and my colleague's question is a good one, because I'm trying to apply the test on sufficiently firm. In other words, the test first, whether the test was, whether the decision was avowedly tentative or not, whether the parties were fully heard or not, whether the court supported its decision with a reasoned opinion or not, and the last, whether the decision was subject to an appeal. And I guess those are the reasons I felt like that question was pretty important. It is very important. And I'm not sure that you would want to go in for further discovery. It seemed to me that everything they gave you was for your betterment. The more discovery you got, the more problem you could have run into. I think there was a great deal of discovery to do with why this man was arrested in the first place, how this came about that morning, because my client was going to testify three hours later, and he was going to testify about a mortgage loan that tied the district attorney's office and the sheriff's office to a major mortgage fraud in that county. Gee whiz, he's arrested at 9 in the morning. Never got a chance to testify. There's a lot more to go into this case. But would you explain to me what the gist of your damages are here? Because we've got a lot of immunity issues. What is it? Well, my colleague will give you an extra minute or so.  At that urging, I will assure you, probably more than a minute. I'll try to be very brief. Given what I just said about her, whatever she tells me, I'll be glad to do. Thank you. He's been damaged in many ways. I'm not sure if he can put his life back together. In Russo, for example, the case I rely on in my briefs, there the man, Russo, sat in jail for, what, nine months, 200 and some days, and the court clearly found that was... But that didn't happen here. That didn't happen here. What happened here was my client had enough money to pay bail, and therefore he didn't sit in jail. The only difference here is he had money to pay for it. But it cost my client over $100,000 to go through these 20 months and all these hearings and motions and discoveries, experts, a very expensive case, number one. Number two, he was charged with felonies he's never been charged with, and that is he's a person who worked with police departments and in the military and training and such, and he can't... It was the prosecution. It was the decision to prosecute that was the problem? Well, there's two things. One is the arrest, which was wrongful. If anyone had actually looked at the evidence before even making an arrest, they wouldn't have arrested him. My client was arrested after the fact with no events that the sheriff's department saw giving rise to an arrest. Do you even allege unlawful arrest? No, we do not. That's what I thought. And you were not detained, your client? Well, there's actually a dispute here as to whether it was lawful or not. Well, but I'm just saying you don't allege unlawful arrest. No, we do not. It's not part of your action. True. And your client was eventually exonerated. The action was dismissed? Yes. No, I think, again, when you file a lawsuit, you try to pick what you think are going to be the primary causes of action and move forward with them. Is it always possible to allege something else? Yes, it is. And, yes, you're right. Okay. Any other questions? Thank you. You're very gracious for your time. I guess we have no other questions. Thank you. Counselor? Please, the Court. My name is Thomas Reardon for the appellees. The questions about collateral estoppel, the Court seems to have it correct. There was a two-day hearing, very thorough by most counts, and there was a final result the Court considered carefully and found there was no constitutional violation.  We don't want to claim that it was ideal practices by any means, but there was just no basis for dismissing the evidence. The question really is, for me, did Pellerin have the right to appeal? He never got that opportunity to appeal. That's correct. Well, if he didn't have the right to appeal, then I can't really impose collateral estoppel, can I? Well, California law does not seem to be completely firm on that, having the ---- Well, there's no question there's a couple of cases about misdemeanors where they do get immediate right to appeal and they seem pretty easy. But this is not a misdemeanor, as your good colleague has suggested. This is a felony. So I have to find, did he have the right to appeal? And if he didn't, then I can't give collateral estoppel. Well, there was finality. One of the issues that is important in the 1538.5 context with the right to appeal. Well, if I read Smidlin, which I think is the best case on this, the last issue is whether the decision was subject to an appeal. And that's what I'm ---- I'm not talking about the finality because the collateral estoppel factors finality is there, and I realize that's the fifth factor. But I'm focusing in on sufficiently firm for collateral estoppel, which is whether the decision is subject to an appeal. That is certainly one of the factors, but in Smidlin those are not conjunctive factors that all have to be met. Those are ones that should be considered by the court, and they were considered by the district court here. But you suggest that we could make that decision based on the fact the issue wasn't tentative, it was fully heard, and it was reasoned and not focused on right to appeal? Correct. And it was brought to the Third District Court of Appeal. I understand for purposes of law of the case, certainly, that decision on denying a writ petition would not suffice to establish an appellate rule. But for purposes of finality. As I understand it, Cowess would really not suggest that the right to have a writ of mandate is the same as the right to appeal. No, it's not the same. You're right. So I guess I'm trying to figure out is there another way, and that was why I questioned him about that. It seems to me I could say this is a special hearing prior to trial, but then from that he could go up. Why would that not be enough? I guess that was my question. You're not arguing that, I suspect. Right. But it's like a number of cases where there's an acquittal or there's some reason why the defendant has no further reason to push on to appeal. There was a final determination. That's the best that we can establish here. And if you don't have collateral estoppel? Yes. If we didn't have collateral estoppel, some of the other immunity issues come into play. Tell us about them. Tell us about them. Well, for prosecutorial and 11th Amendment immunity, this was what's being alleged is sufficiently within the prosecutorial function rather than the administrative function. The Goldstein case or the most recent version of the Long Beach Goldstein case, Ninth Circuit, is obviously the key. And that case established that there are possible exceptions, some activities by the district attorney's office that could be outside of prosecutorial function. In that case, though, it was an index that was the key issue was the providing or composing and then providing an index about jailhouse informants, what kind of benefits they were given and what the results were, whether there was impeachment, so that defendants could use that. How is that any different than this? Because this goes to the very prosecution of this very case where the issue is whether or not the prosecutors sufficiently required the police to do something with the video evidence. Isn't it he's arguing for general restrictions, which would be somewhat like the Goldstein restrictions? Well, it's not clear how that would connect. And, therefore, the prosecutor ought to follow those general guidelines? I agree it's a general abstract principle that's correct, but there's no connection in this case to what happened, what actually happened in the case. In other words, the video evidence that is deemed a silver bullet that the panel keeps talking about is not in actuality a silver bullet. There was an edited version that was provided, and then that was followed up several months later with a complete or a nearly complete version that the expert was able to put together. There's still some question about maybe there's a gap in a couple of the sections, but that evidence was part of what the state trial court and then the third district court of appeal in a full written decision, which I asked for judicial notice. I requested judicial notice, and that was not opposed. They looked at that videotape evidence, and as expected, it's inconclusive. What you have here is Pellerin has some kind of fight. He's a bigger guy. He gets the process server in a bad position. The process server gets injured. So there's issues about, a whole range of issues about the use of force, and the third district court of appeals spells it out. So this is certainly not a question of innocence, and it's not like Rousseau, where you have the tattoos can be identified in the videotape, and they find out, wait a minute, we've had this guy in custody for nine months, and he's not the guy. Everybody admits that Pellerin was involved in a tussle with Helbring. His position was that the video evidence would somehow exonerate him or convince him that no reasonable person could go forward with this prosecution, and that's certainly not the case. What if we should turn to the sheriff's deputy? His conduct? Well, again, it was not ideal, certainly. I mean, if I accept as true all of Pellerin's allegations, it seems like the video contains exculpatory evidence. The officer then knew he was innocent by looking at it, eliminating Cunningham. The officer viewed the evidence. He edited the video to remove that evidence, so the district court can't be right on this was new footage, just incomplete because he was defending himself and eliminating the defense of self-defense, and all to make sure that Pellerin was convicted of the crime. So I'm saying to myself, it seems to me, on a preliminary view, and that's what I got on summary judgment, that at least has to go to trial. I don't get away with collateral estoppel. Well, we know it's not exoneration. That was the claim, and that's what the allegation is, and this is a motion to dismiss. But we know that in actuality it was not that. It was an ambiguous videotape, as you can imagine. In other words, there's nothing that had the prosecution had the full videotape from the first minute. If a police officer had done it perfectly,  as they looked at it, it's possible that in conjunction with other things, they might have decided not to go forward with the prosecution as the attorney general's office did sometime down the line. But it's certainly not a… But we're not there. We're at the point where the police officer sees it, and we're trying to determine whether the police officer could have, under any basis, violated his constitutional rights, and therefore we have to kind of say these are the allegations he made. Is there any way to suggest that any of these allegations could not be sustained at trial? In fact, we're to say they're true and they couldn't be sustained. Well, I would… It could all be true, and if collateral estoppel doesn't apply, then we can all imagine that this is very key evidence that would shift the case. But if you look to Devereux's case, talking about how you treat evidence, well, that's a little bit different, and that goes more to the witness testimony. But the test is whether there's manufacturing of evidence, that there's some kind of affirmative corruption of the system that gets pushed forward and that's used to prosecute, and that's not the case here. Within a couple of months, the district attorney's office had a full or essentially a full version of videotape evidence. So it did not corrupt the rest of the prosecution. Well, you're going then to the prosecution's defenses. I was focusing on the deputy himself. Sure, but Devereux is a case that was against… I appreciate Devereux, but it also seems to me that Devereux, the first test of Devereux is that the defendants continued their investigation despite the fact they knew or should have known he was innocent. That's the first wrong. You can go on the second, but it seems to me counsel suggests the first. That's his allegation, and that's why I led you through accepting all of his allegations as true. It's hard for me to say I can let Officer King out for any reason on accepting his allegations as true. But we know that in this case that his mistakes, and again after a two-day hearing the state court found that he was not doing anything intentionally. He just mishandled it. That's arguing collateral estoppel. Correct. You're right. We can't make a binding determination, but we do have ample evidence from the Third District Court of Appeal in California and others that this evidence was not something that was going to exonerate him. Do you have other questions? No, I don't. Honorable Schroeder, thank you very much. Your time has expired. Thank you very much for your argument. I'll give you 30 seconds to sum up since we took all your time. Two very brief points. Asking you questions. Two very brief points. Number one, with regard to the special hearing and collateral estoppel, I think it's very important for the court to realize that there was no appeal from that special hearing. It was simply a hearing, and in fact what the hearing was was really a discovery mechanism. The Third District Court of Appeals basically gave us an ability to go in and get some discoveries, what was really going on there. There's no appeal from a special evidentiary hearing. But you took a writ of mandate to the Court of Appeal, didn't you? We took a writ of mandate to get the special hearing in the first place because we were not getting any cooperation. There was no way for us to find out what happened with this videotape. So we went up to the Court of Appeal to get a writ of mandamus to make the trial court give us an evidentiary hearing. So, in fact, we got our discovery that way. But there's no appeal from this discovery evidentiary hearing. The hearing was not held to rule on a motion. But you can appeal that by extraordinary writ, correct? And we did, but that writ was simply— Even after the hearing was held and then you had your decision, you still could have used another writ to take that, could you not? Well, you could file a writ, but a writ of mandamus is not— the decision on that is not a final decision one way or the other under California law. I understand your argument. I just was trying to make sure that you and I were agreeing on what you were saying. My biggest problem about this is that it seems like it doesn't seem much different than an acquittal. It's a very unique case because when the Attorney General came in and dismissed the whole action, it really cut off our ability to appeal. We never even got to a preliminary hearing in the case because of the action of the Attorney General and they came in and replaced it in the Nevada County District Attorney's Office. So it's unusual in that sense, and I think the Court's going to have to deal with it in that special circumstance. We never had a chance to go any further. Thirty seconds on the tape. Thirty seconds is gone. Very good. Thank you. Thank you. Case 1315860, Pellerin v. Nevada County, is submitted, and we'll move to Case 1317043, Nichols v. Beard.
judges: Gleason, Schroeder, Smith